UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **SCOTT RODRIGUES** | ) | |
|     **Plaintiff** | ) | C.A. 07-10104-GAO |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE SCOTTS COMPANY, LLC** | ) | |
|     **Defendant** | ) | |

**AMENDED COMPLAINT**
**and jury trial demand**

**Introduction**

1. In this civil action the plaintiff alleges that he was fired by his employer because he smoked cigarettes in private, off-duty, away from work. The employer has a policy of refusing to employ persons who smoke tobacco. The complaint alleges that this policy violates Rodrigues' rights under the Massachusetts Privacy Statute and constitutes a violation of his civil rights. Further, in this amended complaint, the plaintiff alleges that the Scotts Company's antismoking policy violates the Employee Retirement Income Security Act (ERISA) because it discriminates against participants in the corporation's health benefits plans for the purpose of interfering with their receipt of medical benefits. In more general terms, this case challenges the right of an employer to control employees' personal lives and activities by prohibiting legal private conduct the employer finds to be dangerous, distasteful or disagreeable. The plaintiff seeks a declaration that the corporation's policy violates Massachusetts and federal law, compensatory damages and equitable relief.

**Parties**

2. The plaintiff Scott Rodrigues is an adult resident of Buzzards Bay, Barnstable County, Massachusetts.

3. The defendant The Scotts Company, LLC ("Scotts") is an Ohio corporation registered to do business in Massachusetts. Scotts is a subsidiary of Scotts-Miracle-Gro Company, which holds itself as the world's largest marketer of branded consumer lawn and garden products. Scotts has more than 6,000 employees and has more than $2.7 billion in annual sales. Scotts LawnServices is a division of Scotts that provides on-site lawn, tree and shrub fertilization, insect control and other related services. Scotts operates a Scotts LawnServices branch in, among other places around the country, Sagamore Beach, Barnstable County, Massachusetts.

**Facts**

4. In December 2005, Scotts announced that it would institute a policy prohibiting smoking of tobacco products by its employees at any time and at any place, whether or not in the workplace or during work hours. Scotts announced that it would conduct random urine sampling of employees and that employees who tested positive for nicotine would be fired.

5. Scotts' purpose for its nicotine-free policy was to save money on medical insurance costs and to promote healthy lifestyles among its employees.

6. Rodrigues responded to an advertisement placed by Scotts for a "lawn service technician."

7. He was hired by Scotts and assigned to Scotts' Sagamore Beach, Massachusetts business location.

8. Rodrigues was issued a Scotts' uniform and worked for Scotts, servicing Scotts' customers and operating Scotts' equipment. He performed all of his job duties competently. He was paid by Scotts for this work.

9. Pursuant to Scotts' nicotine-free policy, Scotts required Rodrigues to submit to a urine sampling procedure in August 2006, shortly after he was hired.

10. After successfully working for Scotts without incident, Rodrigues was told that he had failed the drug test because his urine sample tested positive for nicotine.

11. Rodrigues was fired by Scotts because he tested positive for nicotine.

12. Scotts provided Rodrigues with no reason for his termination other than the results of his urine analysis.

13. Rodrigues smoked cigarettes while a Scotts employee. He did not smoke on the job or during work hours. He did not smoke during breaks from work or in the presence of other Scotts employees or Scotts customers or vendors.

14. Scotts has no policies compelling employees to abstain from other legal but unhealthy practices, including obesity, consumption of alcohol, failure to exercise, skydiving, excessive television viewing, eating processed sugars, owning dangerous pets, flying private aircraft, mountain climbing, downhill ski racing, single-handed sailing, or spreading toxic chemicals on lawns.

15. In future job applications to which Rodrigues responds truthfully, he will be compelled to inform potential employers that he was fired by Scotts because he failed a drug test. Even if he explains that he tested positive for nicotine, this is such an unusual reason for a termination that potential employers are likely to disbelieve him and to conclude that he failed a drug test for illegal drugs.

## COUNT ONE
### Violation of privacy
### Mass. G.L. c. 214 § 1B

The plaintiff realleges the foregoing.

16. Rodrigues was compelled by Scotts to urinate and to provide a sample of his urine for nicotine testing, on threat of termination of his employment if he refused to comply.

17. Rodrigues had a reasonable expectation of privacy in regard to being compelled to urinate and to provide a urine sample for nonmedical purposes.

18. Rodrigues also had a reasonable expectation of privacy in regard to the information that could be obtained from his urine sample, including nonmedical information that related solely to his legal activities outside of the workplace and outside of work hours.

19. There was nothing about the nature of Rodrigues' job with Scotts that created any business necessity for him to be nicotine-free. Scotts' nicotine-free policy applies to every Scotts employee regardless of the nature of their positions.

20. Scotts had no legitimate business interest in compelling Rodrigues to provide a urine sample for nicotine testing.

21. Scotts had no legitimate business interest in prohibiting Rodrigues from smoking in his private life, away from work.

22. Whatever business interests Scotts may have had in compelling Rodrigues to provide a urine sample for nicotine testing and in prohibiting Rodrigues from smoking in his private life failed to outweigh Rodrigues' privacy interests in not being compelled to provide a urine sample and in maintaining the privacy of his out-of-the-workplace conduct involving legal activities, including smoking.

23. Compelling Rodrigues to urinate and to submit a urine sample for nicotine testing constituted an unreasonable, substantial and serious interference with Rodrigues' privacy and private life, in violation of Mass. G.L. c. 214 § 1B.

### COUNT TWO
### Massachusetts Civil Rights Act violation
### Mass. G.L. c. 12 § 11I

The plaintiff realleges the foregoing.

24. Rodrigues had the right to be secure from unreasonable searches of his person, as protected by art. 14 of the Massachusetts Declaration of Rights, and to be free from unreasonable, substantial and serious interference with his personal privacy, as protected by G.L. c. 214 § 1B.

25. Rodrigues' right to smoke cigarettes in his private life, away from the workplace, was further protected by G.L. c. 214 § 1B and the Massachusetts Declaration of Rights, art. 1, 7, and 56.

26. Compelling Rodrigues to urinate and provide a sample of his urine to Scotts, and testing that sample for nicotine violated the above rights.

27. Firing Rodrigues because he smoked cigarettes in his private life away from the workplace violated the above rights.

28. Scotts threatened to fire Rodrigues if he refused to urinate and to provide a urine sample for nicotine testing.

29. Scotts threatened to fire Rodrigues if his urine sample revealed that he had smoked cigarettes in his private life while a Scotts employee.

30. Scotts' implementation of its nicotine-free policy violated Rodrigues' rights as described above by means of threats, intimidation or coercion, in violation of Mass. G.L. c. 12 § 11I.

## COUNT THREE
## WRONGFUL TERMINATION

The plaintiff realleges the foregoing.

31. The public policy of the Commonwealth, as expressed in G.L. c 214 § 1B and in art. 1 and 14 of the Declaration of Rights, is to protect citizens from unreasonable searches and seizures of their persons and from unreasonable, substantial and serious interference with their personal privacy.

32. Rodrigues had the right to refuse to provide a urine sample for nicotine testing.

33. Rodrigues had the right to smoke cigarettes in his personal life, outside of the workplace and work hours.

34. Rodrigues was fired by Scotts in violation of those rights. This termination constituted a wrongful termination of his employment for a reason in violation of the public policy of the Commonwealth.

35. As a result of all of the above conduct by Scotts, Rodrigues was injured. He suffered loss of income and benefits, embarrassment, humiliation, emotional distress and his rights were otherwise violated.

## COUNT FOUR
## ERISA VIOLATION
## 29 USCS § 1140

The plaintiff realleges the foregoing.

36. Scotts maintained employee benefit plans that provided for the payment of medical expenses, short term disability and long term disability. Such plans are covered by ERISA, 29 U.S.C. § 1001 *et seq.*.

37. Scotts informed the plaintiff that he would be eligible for these benefit plans after a sixty-day waiting period. The plaintiff signed an acknowledgement that he had been informed of his eligibility for these plans and agreed that he would notify the company if he failed to receive application forms for these plans shortly after beginning employment.

38. Rodrigues was fired before he had worked for Scotts for sixty days.

39. Rodrigues intended to participate in all Scotts' medical and disability benefit plans as soon as he was eligible to do so.

40. But for the wrongful termination of his employment, the plaintiff would have become eligible to participate in one or more of Scotts' employee benefit plans and would have participated in such plans.

41. Scotts instituted and applied its anti-tobacco policy to prevent employees who smoked tobacco products from participation in its health care and disability benefit plans because of a belief by Scotts that such employees would require greater expenditures for health care and disability benefits than would employees who did not use tobacco products.

42. Scotts' instituted and applied its anti-tobacco policy for the purpose of reducing the amount of money the company spent on its health care and disability benefit plans.

43. Scotts' discriminated against the plaintiff and terminated the plaintiff's employment for the purpose of interfering with and actually did interfere with the attainment of benefits and rights to which the plaintiff would have become eligible under one or more of Scott's medical and other benefits plans.

44. Such conduct by Scotts violated the plaintiff's rights as protected by 29 U.S.C. § 1140.

45. Wherefore, Rodrigues demands judgment against the defendant Scotts as follows under Counts I - III:

    a. A declaratory judgment finding that Rodrigues' rights as described above were violated when he was compelled to provide a urine sample for nicotine testing, when his urine was tested for the presence of nicotine and when he was fired for having smoked cigarettes outside the workplace;

    b. An award of compensatory damages, plus interests and costs;

    c. An award of punitive damages;

    d. An award of his reasonable costs and fees of this action, including his reasonable attorneys fees.

46. Further, Rodrigues demands judgment against the defendant Scotts as follows under Count IV, pursuant to 29 U.S.C. § 1132(a):

    a. A declaratory judgment finding that Rodrigues' rights as protected by 29 U.S.C. § 1140 were violated by the defendant's conduct described above;

    b. A permanent injunction prohibiting the Scotts Company from enforcing or applying its anti-nicotine policy by terminating, dismissing or otherwise discriminating against any employee because of that employee's use of tobacco products outside of the workplace and outside of working hours;

    c.      An order reinstating the plaintiff to his position with the defendant, with full back pay, benefits and seniority;

    d.      Equitable relief in the form of an order requiring that the Scotts Company be required to disgorge and pay to the plaintiff all amounts of money it avoided paying to participants in its benefit plans by means of its anti-tobacco policy.

    e.      An award of the plaintiff's reasonable costs and fees of this action, including his reasonable attorneys fees.

**Jury demand** – The plaintiff demands a jury trial as to all applicable claims.

Scott Rodrigues, plaintiff
By his attorneys,

  /s/ Harvey A. Schwartz
HARVEY A. SCHWARTZ
 BBO # 448080
Rodgers, Powers & Schwartz
18 Tremont Street
Boston, MA 02108
(617) 742-7010

### Certificate of service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 24, 2007.

                                        /s/ Harvey A. Schwartz