UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-10104-GAO

SCOTT RODRIGUES,
Plaintiff,

v.

EG SYSTEMS, INC. d/b/a SCOTTS LAWNSERVICE,
Defendant.


OPINION AND ORDER
July 23, 2009

O'TOOLE, D.J.

The plaintiff, Scott Rodrigues, brings suit under both Massachusetts General Laws chapter 214, § 1B, and the Employee Retirement Income Security Act anti-discrimination provision ("ERISA Section 510"), 29 U.S.C. § 1140, alleging that defendant, EG Systems, Inc. d/b/a Scotts LawnService ("Scotts"), violated his right to privacy under the Massachusetts statute and unlawfully discharged him to avoid paying him denied benefits under Scotts' medical insurance plan. Scotts has moved for summary judgment on both claims; Rodrigues has moved for partial summary judgment as to the ERISA Section 510 claim.

I.    **Background**

The following is a summary of uncontested facts, except where otherwise noted:

Rodrigues applied for a lawn-care position with Scotts on two occasions, first in early 2006 and then again in August 2006. The first time, as part of the job application process, Rodrigues voluntarily submitted a urine sample to be screened for the presence of drugs. Scotts was not then testing its potential employees for nicotine. Scotts did not hire Rodrigues because a criminal record

1

check revealed several traffic violations on his record.

Beginning in March 2006, Scotts began to test potential employees for nicotine pursuant to its "LiveTotal Health initiative." Scotts describes this initiative as a "wellness plan" having as one of its main goals to reduce smoking among employees. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. Ex. A1, ¶ 2.) Rodrigues argues that the primary motivation behind the initiative is to reduce the costs of medical insurance. Pursuant to the initiative, Scotts prohibits employees from using tobacco at any time and also provides resources to help smokers quit. (Id. ¶ 5.) It is Scotts' policy not to hire tobacco users.

In August 2006, Rodrigues reapplied for employment with Scotts. (His traffic violations had become old enough that they were no longer disqualifying under Scotts' hiring policies.) This time Rodrigues received an "offer of employment" letter, which he read and signed. The letter recited that his employment with Scotts was "contingent upon successful completion of a pre-hire screening required of all Scotts' associates which includes but is not limited to a drug screen (including nicotine test where applicable by law) and criminal history." (Pl.'s Statement of Facts Pursuant to L.R. 56.1 Ex. 11, 2.) Rodrigues again volunteered a urine sample to be tested.

Pending the results of a background check and the analysis of the urine sample, Rodrigues started work for Scotts. For about two weeks, Rodrigues wore a Scotts uniform, drove a Scotts truck, and applied Scotts products on customers' lawns. (Pl.'s Statement of Facts Pursuant to L.R. 56.1 ¶ 10.) When the results of the urinalysis came back, Rodrigues was notified that because his urine had tested positive for nicotine, he could no longer work for Scotts. Rodrigues responded to what he calls his "termination" by filing this suit against Scotts, originally alleging four causes of action: (1) violation of his right to privacy under Massachusetts General Laws chapter 214, § 1B; (2) violation

of his rights under the Massachusetts Civil Rights Act; (3) wrongful termination; (4) violation of ERISA Section 510 by interfering with attainment of benefits to which he was entitled. On Scotts' motion, I dismissed Counts Two and Three. Rodrigues v. Scotts Co., LLC, No. 07-10104, 2008 WL 251971 (D. Mass. Jan. 30, 2008). Now Scotts has moved for summary judgment on the two remaining counts. Rodrigues has also moved for partial summary judgment on the ERISA Section 510 violation.

**II.     Standard of Review**

The overarching purpose of a motion for summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the evidence presented demonstrates that "there is no genuine issue of material fact in the case" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**III.    Discussion**

    A.     Invasion of Privacy

Massachusetts General Laws chapter 214, § 1B provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy." To be successful in an action under this statute, "a plaintiff must establish that the [invasion] was both unreasonable and either substantial or serious." Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 681-82 (Mass. 2005). To fall within the ambit of the statute, the purportedly private facts must be of a "highly personal or intimate nature." Bratt v. Int'l Bus. Machs. Corp., 467 N.E.2d 126, 134 (Mass. 1984). However, a person's privacy has not been invaded when the facts at issue, even though highly personal, are already in the public domain. Brown v. Hearst Corp., 862 F. Supp. 622, 631 (D. Mass.1994).

Similarly, a person does not have a privacy interest in information that he openly makes available to the public. See Dasey v. Anderson, 304 F.3d 148, 154 (1st Cir. 2002) (no privacy interest in smoking marijuana with others present);  French v. United Parcel Serv., Inc., 2 F. Supp. 2d 128, 130-31 (D. Mass. 1998) (no privacy interest in public drinking).

The Massachusetts privacy cases have emphasized the need for a careful balancing of an employer's legitimate business interest in obtaining an employee's private information and the employee's interest in keeping private information private. See Webster v. Motorola, Inc., 637 N.E.2d 203, 207 (Mass. 1994); Folmsbee v. Tech. Toll Grinding & Supply Inc., 630 N.E.2d 586, 588 (Mass. 1994); Bratt, 467 N.E.2d at 136. However, even before the court can conduct the "balancing," the plaintiff must demonstrate that he has a protected privacy interest in the information. Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 567 N.E.2d 912, 915 (Mass. 1991).

Rodrigues does not have a protected privacy interest in the fact that he is a smoker because he has never attempted to keep that fact private. In his deposition, he acknowledged that he has willingly made the fact that he is a smoker available to the public. For example, Rodrigues admitted to smoking openly in public. He testified that he smokes while walking down the street heading to the post office, (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. Ex. B, 97:5-9), that he smokes with others in the parking lot of a McDonald's restaurant, (id. 111:9-15), and that he openly purchases cigarettes wherever they are sold, (id. 94:23-24). He further testified that during the time he was working with Scotts, a supervisor noticed a pack of cigarettes in plain view on the dashboard of Rodrigues's vehicle and gave him a written warning as a result. (Id. 110:15-20.) It is clear from

these admissions that Rodrigues has not attempted to keep the fact of his smoking private.[1] He has

no cause of action under the Massachusetts privacy statute.

     B.     ERISA Section 510

     ERISA Section 510 makes it unlawful for an employer to, "discharge, fine, suspend, expel,

discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with

the attainment of any right to which such participant may become entitled under the plan . . . ." In

order to establish the prima facie case under Section 510, a plaintiff must show that he (1) is entitled

to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances

that give rise to an inference of discrimination. Barbour v. Dynamics Research Corp., 63 F.3d 32, 38

(1st Cir. 1995); see also Kampmier v. Emeritus Corp., 472 F.3d 930, 943 (7th Cir. 2007) (stating that,

to recover under Section 510 for a discharge, a plaintiff "must demonstrate that (1) she is a member

of an ERISA plan, (2) she was qualified for the position, and (3) she was discharged under

circumstances that provide some basis for believing that [the employer] intended to deprive her of

benefits").

     The threshold question is whether the plaintiff has standing as a plan "participant," which he

claims to be, to sue under ERISA's provisions. ERISA defines a participant as "any employee . . .

who is or *may become* eligible to receive a benefit of any type from an employee benefit plan . . . ."

29 U.S.C. § 1002(7) (emphasis added). In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117

(1989), the Supreme Court interpreted this term this way: "[T]he term 'participant' is naturally read

to mean either employees in, or reasonably expected to be in, currently covered employment."

---

[1] Rodrigues's only claim of invasion of privacy is based on Scotts' discovery of nicotine in his system. He does not claim that the requirement of a pre-employment urine test itself was an invasion of privacy.

(internal quotation and citation omitted). Courts in this circuit have given the term a broad interpretation. See Vartanian v. Monsanto Co., 14 F.3d 697, 703 (1st Cir. 1994).

Under the Scotts benefit plan, Rodrigues would be eligible for benefits if he were a "regular, full-time associate." (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. Ex. A1, at 0009.) For a "LawnService Associate," benefits coverage begins "on the first day of the month on or following 60 days of continuous full-time employment." (Id. at 0010.)

Rodrigues does not qualify as a participant in the plan under these provisions. He worked for Scotts for only two weeks and his "regular" employment was clearly made contingent on his successful passing of the background check and urinalysis screening. He was not yet eligible for benefit coverage under the Scotts plan. The letter offering him employment states, "This offer is *contingent upon successful completion* of a pre-hire screening required of all Scotts' associates which includes but is not limited to a drug screen (including nicotine test where applicable by law) and criminal history." (Id. Ex. L, 2) (emphasis added).

Rodrigues contends that he would have become a regular, full-time employee, and thus a participant, if Scotts had not wrongfully relied on the discovery of nicotine in the urinalysis to terminate his incipient employment. He invokes statements like one from the Vartanian case to the effect that an employer should not be able through its own misfeasance to defeat an employee's standing. See 14 F.3d at 703.

It is not necessary here to try to delineate the circumstances that might or might not give a not-yet participant in an ERISA plan standing to sue under Section 510 as a participant, because there is a simple reason why Rodrigues may not sue. Section 510 forbids discrimination by a variety of employment-related actions, but it does not, by its terms, forbid discrimination by means of a

6

decision not to hire. In <u>Becker v. Mack Trucks, Inc.</u>, 281 F.3d 372, 379-83 (3d Cir. 2002), the Third Circuit examined both the text and the purpose of Section 510 and concluded that it does not apply to hiring decisions. The court examined other acts passed by Congress which expressly prohibited discrimination in hiring, such as the National Labor Relations Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. <u>See id.</u> at 381 n.6. The court concluded that the omission of the word "hiring" from the text of Section 510 was evidence of the congressional intent not to include it within the meaning of the section. <u>Id.</u> at 381. Properly understood, Section 510 governs an existing employer-employee relationship, <u>see id.</u> at 382, not a pre-employment relationship, <u>see id.</u> ("Unlike a discharge or other workplace harassment, a failure to hire does not amount to a circumvention of promised benefits because job applicants who have yet to be hired have not been promised any benefits."). <u>Becker</u>'s reasoning is sound. A person such as Rodrigues, who has only a contingent offer of employment, does not have an expectation of benefits under the potential employer's ERISA plan that Section 510 protects.

## IV.    Conclusion

For the foregoing reasons, the defendant's Motion for Summary Judgment (dkt. no. 49) is GRANTED, and the plaintiff's Motion for Partial Summary Judgment (dkt. no. 55) is DENIED.

Judgment shall enter for the defendant under all counts of the second amended complaint.

It is SO ORDERED.

           /s/ George A. O'Toole, Jr.
           United States District Judge